UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **15-20438**

18 U.S.C. § 1349
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 2
18 U.S.C. § 982

**CR-BLOOM**

**/VALLE**

FILED by _____ D.C.

JUN 1 1 2015

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES OF AMERICA

vs.

DEAN BUTLER,
NERY COWAN,
    and
IRINA MORA,

        Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment,

### The Health Insurance Programs

1.    The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were 65 or older or disabled.

2.    Medicare was a "health benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320-7b(f).

3.      Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare & Medicaid Services ("CMS").  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

4.      Part B of Medicare covered partial hospitalization programs ("PHPs") connected with the treatment of mental illness.  The treatment program of PHPs closely resembled that of a highly-structured, short-term hospital inpatient program, but it was a distinct and organized intensive treatment program that offered less than 24-hour daily care and was designed, in part, to reduce medical costs by treating qualifying individuals outside the hospital setting.

5.      Under the PHP benefit, Medicare covered the following services:  (1) individual and group therapy with physicians or psychologists (or other authorize mental health professionals); (2) occupational therapy; (3) services for social workers, trained psychiatric nurses, and other staff trained to work with psychiatric patients; (4) drugs and biologicals furnished for therapeutic purposes that cannot be self-administered; (5) individualized activity therapies that are not primarily recreational or diversionary; (6) family counseling (for treatment of the patient's condition); (7) patient training and education; and (8) diagnostic services.

6.      Medicare generally required that the PHP provided at a facility that is hospital-based or hospital-affiliated, but Medicare also allowed PHP to be provided in a Community Mental Health Center ("CMHC"), which is a provider type under Part A of Medicare.

7.      Medicare required that, to qualify for the PHP benefit, the services must have been reasonable and necessary for the diagnosis and active treatment of the individual's condition.  The program also must have been reasonably expected to improve or maintain the condition and functional level of the patient and to prevent relapse or hospitalization.  The program must have been prescribed by a physician and furnished under the general supervision

of a physician and under an established plan of treatment that meets Medicare requirements.

8.      Typically, a patient who needed this intensive PHP treatment had a long history of mental illness that had been treated.  Patients were ordinarily referred either (a) by a hospital after full inpatient hospitalization for severe mental illness or (b) by a doctor who was trying to prevent full inpatient hospitalization for a severely mentally ill patient the doctor had been treating.

9.      Medicare guidelines specifically excluded meals and transportation from coverage under the PHP benefit.

10.      Medicare did not cover programs involving primarily social, recreational, or diversionary activities.  Psychosocial programs that provided only a structured environment, socialization, or vocational rehabilitation were not covered by Medicare.

11.      In order to receive payment from Medicare, a CMHC, medical clinic, or a physician was required to submit a health insurance claim form to Medicare, called a Form 1450. The claims may have been submitted in hard copy of electronically.  A CMHC, medical clinic, and physician may have contracted with a billing company to transmit claims to Medicare on their behalf.

12.      Medicare Part B was administered in Florida by First Coast Service Options, which, pursuant to contract with the United States Department of Health and Human Services, served as a contracted carrier to receive, adjudicate and pay Medicare Part B claims submitted to it by Medicare beneficiaries, physicians, or CMHCs.  Medicare Part B paid CMHCs and physicians directly for the cost of PHP services furnished to eligible Medicare beneficiaries, provided that the services met Medicare requirements.

13.      Florida Medicaid covered community mental health services, including PHP treatment.

14.     An "Assisted Living Facility" or "ALF" is a facility licensed by the Florida Agency for Health Care Administration, whether operated for profit or not, which undertakes through its ownership or management to provide housing, meals, and one or more personal services for a period exceeding 24 hours to one or more adults who are not relatives of the owner or administrator.

### Defendants and Relevant Entities

15.     Greater Miami Behavioral Healthcare Center, Inc. ("Greater Miami"), was a Florida corporation that purported to operate a CMHC in Miami, Florida at the following addresses:  5040 NW 7th Street, Miami, FL 33126 and 7000 NW 52nd Street, Miami, FL 33166.

16.     HNB-Stell Care, Inc. ("HNB") was a Florida corporation located at 2405 Riverlane Terrace, Ft. Lauderdale, FL 33312.

17.     Tri-Star Group of South Florida, LLC., was a Florida corporation located at 2405 Riverlane Terrace, Ft. Lauderdale, FL 33132.

18.     Defendant **DEAN BUTLER**, a resident of Broward County, was the owner, Director and Administrator of Greater Miami, a Director for HNB, and a Manager for Tri-Star.

19.     Defendant **NERY COWAN**, a resident of Miami-Dade County, was an Administrator and Director for Greater Miami, President and Director of Nery Cowan Consulting Services, Inc. ("NCCS"), and a Manager for Tri-Star.

20.     Defendant **IRINA MORA**, a resident of Miami-Dade County, was the Director of Finance and Director for Greater Miami.

21.     Co-conspirator Alan Gumer, a resident of Miami-Dade and Broward Counties, was a psychiatrist for Greater Miami.

22.     Co-Conspirator Michael Mendoza was the President of Network Resource Consultant, Inc. ("Network Resource"), a Florida corporation, and he was paid kickbacks and

4

bribes by HNB to refer Medicare beneficiaries to Greater Miami (a "Patient Broker").

23.     Co-Conspirator Ricardo Salgo, a Patient Broker, was the President of Artel International Corp. ("Artel"), a Florida corporation, and he was paid kickbacks and bribes by HNB to refer Medicare beneficiaries to Greater Miami.

24.     Co-conspirator Lazaro Martinez, a Patient Broker, was paid kickbacks and bribes through Network Resource to refer Medicare beneficiaries to Greater Miami.

25.     Co-Conspirator A, a Patient Broker, was the President of Company A, a Florida corporation, and he was paid kickbacks and bribes by HNB and Network Resource to refer Medicare beneficiaries to Greater Miami.

26.     Co-Conspirator B, a Patient Broker, was paid kickbacks and bribes through Network Resource to refer Medicare Beneficiaries to Greater Miami.

27.     Co-conspirator C, a Patient Broker, was paid kickbacks and bribes through Network Resource to refer Medicare beneficiaries to Greater Miami.

### COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. §1349)

1.     Paragraphs 1 through 19, and 21 through 27 of the General Allegations section of the Indictment are realleged and incorporated by reference as fully set forth herein.

2.     From in or around at least September 2006 and continuing through in or around at least April 2014, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendants,

**DEAN BUTLER,**
**and**
**NERY COWAN,**

did willfully that is, with the intent to further the objects of the conspiracy, and knowingly, combine, conspire, confederate, and agree with each other and with Alan Gumer, Michael

Mendoza, Ricardo Salgo, Lazaro Martinez, Co-conspirator A, Co-Conspirator B, Co-Conspirator C, and others known and unknown to the Grand Jury to commit certain offenses against the United States, namely:

   a. to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

   b. to knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

  3. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare through Greater Miami and NCCS for claims based on bribes and kickbacks; (b) submitting false and fraudulent claims to Medicare through Greater Miami and NCCS for services that were medically unnecessary, that were not eligible for Medicare reimbursement, and that were never provided; (c) offering and paying kickbacks and bribes to individuals who

referred Medicare beneficiaries to attend Greater Miami's PHP who were not eligible to receive such services under Medicare guidelines; (d) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks and bribes to Patient Brokers; and (e) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators in the form of compensation and other remuneration.

### Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirator sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.      In or around August 2009, **DEAN BUTLER** falsely certified to Medicare that Greater Miami would comply with all Medicare rules and regulations, including that Greater Miami would refrain from violating the federal Anti-Kickback statute.

5.      Thereafter, **DEAN BUTLER**, **NERY COWAN**, and others, devised and participated in a scheme to pay illegal kickbacks and bribes to co-conspirator Patient Brokers in return for referring Medicare beneficiaries to Greater Miami to serve as patients so that Greater Miami could bill Medicare for PHP services on behalf of those Medicare beneficiaries.

6.      In order to conceal the payment of kickbacks and bribes at Greater Miami from Medicare and state regulators, **DEAN BUTLER**, **NERY COWAN**, and others, created and caused to be created false and fraudulent contracts between Greater Miami, HNB and co-conspirator Patient Brokers.

7.      In order to further conceal the payment of kickbacks and bribes at Greater Miami from Medicare and state regulators, and at the direction of **DEAN BUTLER**, **NERY COWAN**, and others, certain Patient Brokers were instructed to create false and fraudulent invoices which were submitted to Greater Miami for payment.

8.      **DEAN BUTLER, NERY COWAN**, and other co-conspirators falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of Greater Miami medical records, including initial psychiatric evaluations, treatment plans, and other purported mental health records, to support claims for PHP services that were obtained through kickbacks and bribes, medically unnecessary, and were never provided at Greater Miami.

9.      **DEAN BUTLER, NERY COWAN**, and others, through the use of interstate wires, submitted and caused the submission of false and fraudulent claims to Medicare for mental health treatment purportedly provided by Greater Miami in an amount exceeding $63 million.

All in violation of Title 18, United States Code, Section 1349.

**COUNT 2**
**Conspiracy to Defraud the United States and Pay and**
**Receive Health Care Kickbacks**
**(18 U.S.C. § 371)**

1.      Paragraphs 1 through 20, and 22 through 27 of the General Allegation section of the Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around September 2006,  and continuing through at least in or around April 2012, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendants,

**DEAN BUTLER,**
**NERY COWAN,**
**and**
**IRINA MORA,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, and with Michael Mendoza, Ricardo Salgo, Lazaro Martinez, Co-conspirator A, Co-Conspirator B, Co-Conspirator C, and others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.      to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program; and

b.      to knowingly and willfully offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A); and

c.      to knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for **DEAN BUTLER**, **NERY COWAN**, **IRINA MORA**, and their co-conspirators to unlawfully enrich themselves by:  (1) offering, paying, soliciting, and receiving kickbacks and bribes in return for referring Medicare beneficiaries to Greater Miami to serve as patients; and (2) submitting and causing the submission of claims to Medicare for PHP services that Greater Miami purported to provide to those beneficiaries.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

4.    **DEAN BUTLER**, **NERY COWAN**, **IRINA MORA**, and others paid and caused the payment of bribes and kickbacks to co-conspirator Patient Brokers in exchange for referring Medicare beneficiaries to Greater Miami.

5.    **DEAN BUTLER** and **NERY COWAN** created and caused the creation of false and fraudulent contracts between Greater Miami and certain Patient Brokers in order to disguise the true nature of Greater Miami's relationship with the Patient Brokers.

6.    **DEAN BUTLER**, **NERY COWAN**, **IRINA MORA**, and others instructed and caused the co-conspirator Patient Brokers to create false and fraudulent invoices, which were submitted to Greater Miami in order to disguise the true nature of Greater Miami's relationship with, and the payments to, the Patient Brokers.

7.    **DEAN BUTLER**, **NERY COWAN**, **IRINA MORA**, and others submitted and caused the submission of more than $63 million in claims to Medicare for services purportedly rendered to the recruited beneficiaries.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

1.    In or around October 2010, **NERY COWAN** negotiated a kickback payment with certain Patient Brokers.

2.    On or about October 6, 2010, **IRINA MORA** signed Greater Miami Check #6290, in the approximate amount of $100,000, made payable to HNB.

3.      On or about October 6, 2010, **DEAN BUTLER** signed HNB Check #3964, in the approximate amount of $31,250, made payable to Network Resource.

4.      On or about October 7, 2010, **DEAN BUTLER** signed HNB Check #3965, in the approximate amount of $31,244, made payable to Artel.

5.      On or about October 14, 2010, **DEAN BUTLER** signed HNB Check #3974, in the approximate amount of $35,000, made payable to Network Resource.

6.      On or about October 14, 2010, **DEAN BUTLER** signed HNB Check #3971, in the approximate amount of $1,440, made payable to Artel.

7.      In or around November 2010, **NERY COWAN** negotiated a kickback payment with certain Patient Brokers.

8.      On or about November 3, 2010, **IRINA MORA** signed Greater Miami Check #6346, in the approximate amount of $100,000, made payable to HNB.

9.      On or about November 3, 2010, **DEAN BUTLER** signed HNB Check #3993, in the approximate amount of $32,400, made payable to Network Resource account.

10.     On or about November 5, 2010, **DEAN BUTLER** signed HNB Check #3995, in the approximate amount of $38,924, made payable to Artel.

11.     In or around September 2011, **NERY COWAN** negotiated a kickback payment with certain Patient Brokers.

12.     On or about September 2, 2011, **IRINA MORA** signed Greater Miami Check #6854, in the approximate amount of $170,000, made payable to HNB.

13.     On or about September 2, 2011, **DEAN BUTLER** signed HNB Check #4286, in the approximate amount of $39,920, made payable to Network Resource.

14.     On or about September 15, 2011, **IRINA MORA** signed Greater Miami Check #6873, in the approximate amount of $170,000, made payable to HNB.

15.     On or about September 15, 2011, **DEAN BUTLER** signed HNB Check #4296, in the approximate amount of $25,000, made payable to Network Resource.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 3-10**
**Payment of Kickbacks in Connection with a**
**Federal Health Care Program**
**(42 U.S.C. § 1320a-7b(b)(2)(A))**

1.     Paragraphs 1 through 20, and 22 through 26 of the General Allegation section of the Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendants,

**DEAN BUTLER,**
**NERY COWAN,**
**and**
**IRINA MORA,**

did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, as set forth below:

| Count | Approximate Date of Payment | Approximate Amount | Description |
|---|---|---|---|
| 3 | October 6, 2010 | $31,250 | HNB Check #3964 paid to Network Resource, controlled by Patient Broker Michael Mendoza. |
| 4 | October 7, 2010 | $31,244 | HNB Check #3965 paid to Artel, controlled by Patient Broker Ricardo Salgo. |
| 5 | October 14, 2010 | $35,000 | HNB Check #3974 paid to Network Resource, controlled by Patient Broker Michael Mendoza, account x9272. |
| 6 | October 14, 2010 | $1,440 | HNB Check #3971 paid to Artel, controlled by Patient Broker Ricardo Salgo. |

| Count | Approximate Date of Payment | Approximate Amount | Description |
|---|---|---|---|
| 7 | November 3, 2010 | $32,400 | HNB Check #3993 paid to Network Resource, controlled by Patient Broker Michael Mendoza. |
| 8 | November 5, 2010 | $38,924 | HNB Check #3995 paid to Artel, controlled by Patient Broker Ricardo Salgo. |
| 9 | September 2, 2011 | $39,920 | HNB Check #4286 paid to Network Resource, controlled by Patient Broker Michael Mendoza. |
| 10 | September 15, 2011 | $25,000 | HNB Check #4296 paid to Network Resource, controlled by Patient Broker Michael Mendoza. |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

## COUNT 11
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.      Paragraphs 1 through 20, and 22 through 26 of the General Allegations section of the Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around September 2006, and continuing through at least in or around April 2012, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendants,

**DEAN BUTLER,**
**NERY COWAN,**
**and**
**IRINA MORA,**

did knowingly and willfully combine, conspire, confederate, and agree with Michael Mendoza, Ricardo Salgo, Lazaro Martinez, Co-conspirator A, Co-Conspirator B, Co-Conspirator C, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is, to knowingly conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful activity,

13

knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activity is payment of kickbacks in connection with a federal health care program, in violation of Title 42 U.S.C. § 1320a-7b(b)(2)(A).

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 12-15**
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

1.      Paragraphs 1 through 20, and 22 through 26 of the General Allegations section of the Indictment are realleged and incorporated by reference as though fully set forth herein..

2.      On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**DEAN BUTLER,**
**NERY COWAN,**
**and**
**IRINA MORA,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, as set forth below:

14

| Count | Description of Financial Transaction | Approximate Date of Transaction |
|-------|--------------------------------------|---------------------------------|
| 12 | Greater Miami Check #6290, in the approximate amount of $100,000, deposited into HNB account x1981 | October 6, 2010 |
| 13 | Greater Miami Check #6346, in the approximate amount of $100,000, deposited into HNB account x1981 | November 3, 2010 |
| 14 | Greater Miami Check #6854, in the approximate amount of $170,000, deposited into HNB account x1981 | September 2, 2011 |
| 15 | Greater Miami Check #6873, in the approximate amount of $170,000, deposited into HNB account x1981 | September 15, 2011 |

It is further alleged that the specified unlawful activity is receipt of kickbacks in connection with a federal health care program, in violation of Title 42 U.S.C. § 1320a-7b(b)(2)(A).

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982)

1.      The General Allegations section of this Indictment and the allegations set forth in Counts 1 through 15 are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which one or more of the defendants, **DEAN BUTLER,  NERY COWAN,** and **IRINA MORA,** have an interest.

2.      Upon conviction of a violation of, or a conspiracy to violate, Title 18, United States Code, Section 1349, or a violation, or a conspiracy to violate, Title 42, United States Code, Section 1320a-7b(b)(2)(A), as alleged in this Indictment, the defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation.

15

3.       Upon conviction of a violation of, or a conspiracy to violate, Title 18, United States Code, Section 1956(a)(1)(B)(i), as alleged in this Indictment, the defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, that is involved in the offense, or any property traceable to such property.

4.       The property which is subject to forfeiture includes, but is not limited to, the following:

a.   a sum of money equal in value to the property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the federal health care offenses, as defined in Title 18, United States Code, Section 24, alleged in this Indictment; and

b.   a sum of money equal in value to the property, real or personal, that was involved in the violations of, or the conspiracy to violate, Title 18, United States Code, Section 1956(a)(1)(B)(i), as alleged in the Indictment, or any property traceable to such property.

c.   Real Property:    The real property located at 2405 Riverlane Terrace, Fort Lauderdale, Florida 33312.

d.   Substitute Property: If any of the property described above, as a result of any act or omission of a defendant:

(1)      cannot be located upon the exercise of due diligence;

(2)      has been transferred or sold to, or deposited with, a third party;

(3)      has been placed beyond the jurisdiction of the court;

(4)      has been substantially diminished in value; or

(5)      has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(7) and the procedure set forth at Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b).

A TRUE BILL

_____
FOREPERSON


_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

_____
ALLAN J. MEDINA
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES OF AMERICA

vs.

DEAN BUTLER,
NERY COWAN, and
IRINA MORA,

**Defendants.**

_____ /

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

| | | |
|---|---|---|
| New Defendant(s) | Yes _____ | No _____ |
| Number of New Defendants | _____ | |
| Total number of counts | _____ | |

**Court Division:** (Select One)

| | | |
|---|---|---|
| __X__ Miami | _____ Key West | |
| _____ FTL | _____ WPB | _____ FTP |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    __Yes__
   List language and/or dialect    __Spanish__

4. This case will take ____15____ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

| | | | |
|---|---|---|---|
| I | 0 to 5 days | _____ | |
| II | 6 to 10 days | _____ | |
| II | 11 to 20 days | __X__ | |
| IV | 21 to 60 days | _____ | |
| V: | 61 days and over | _____ | |

   (Check only one)

| | |
|---|---|
| Petty | _____ |
| Minor | _____ |
| Misdem. | _____ |
| Felony | __X__ |

6. Has this case been previously filed in this District Court?    (Yes or No)    __No__
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?    (Yes or No)    __No__
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)    __No__

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    _____ Yes    __X__ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    _____ Yes    __X__ No

_____
ALLAN J. MEDINA
DOJ TRIAL ATTORNEY
Court No. A5501748

*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**     **DEAN BUTLER**

**Case No:** _____

Count #:   1

   18 U.S.C. § 1349

   Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty:**   Twenty (20) years' imprisonment.

Count #:   2

   18 U.S.C. § 371

   Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

**\*Max Penalty:**   Five (5) years' imprisonment.

Counts #:   3 – 10

   42 U.S.C. § 1320a-7b(b)(2)(A)

   Payment of Kickbacks in Connection with a Federal Health Care Program

\*Max Penalty:   Five (5) years' imprisonment as to each count.

Count #:   11

   18 U.S.C. § 1956(h)

   Conspiracy to Commit Money Laundering

\*Max Penalty:   Twenty (20) years' imprisonment.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**     **DEAN BUTLER**

Case No: 

Counts #:   12 - 15

  18 U.S.C. § 1956(a)(1)(B)(i)

  Money Laundering

**\*Max Penalty**:     Twenty (20) years' imprisonment as to each count.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**     **NERY COWAN**

**Case No:**

Count #:   1

   18 U.S.C. § 1349

   Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty**:    Twenty (20) years' imprisonment.

Count #:   2

   18 U.S.C. § 371

   Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

**\*Max Penalty**:    Five (5) years' imprisonment.

Counts #:   3 – 10

   42 U.S.C. § 1320a-7b(b)(2)(A)

   Payment of Kickbacks in Connection with a Federal Health Care Program

\*Max Penalty:    Five (5) years' imprisonment as to each count.

Count #:   11

   18 U.S.C. § 1956(h)

   Conspiracy to Commit Money Laundering

\*Max Penalty:    Twenty (20) years' imprisonment.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**    **NERY COWAN**

**Case No:**

Counts #:    12 - 15

   18 U.S.C. § 1956(a)(1)(B)(i)

   Money Laundering

**\*Max Penalty:**     Twenty (20) years' imprisonment as to each count.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   **IRINA MORA**

**Case No:**

Count #:   2

 18 U.S.C. § 371

 Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

**\*Max Penalty**:   Five (5) years' imprisonment.

Counts #:   3 – 10

 42 U.S.C. § 1320a-7b(b)(2)(A)

 Payment of Kickbacks in Connection with a Federal Health Care Program

\*Max Penalty:   Five (5) years' imprisonment as to each count.

Count #:   11

 18 U.S.C. § 1956(h)

 Conspiracy to Commit Money Laundering

\*Max Penalty:   Twenty (20) years' imprisonment.

Counts #:   12 - 15

 18 U.S.C. § 1956(a)(1)(B)(i)

 Money Laundering

**\*Max Penalty**:   Twenty (20) years' imprisonment as to each count.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**